955 F.Supp. 1164 (1997)
David C. SINGLETON, Plaintiff,
v.
Don CECIL, et al., Defendants.
No. 1:94CV71 CDP.
United States District Court, E.D. Missouri, Southeastern Division.
February 20, 1997.
Jim R. Bruce, II, Kennett, MO, for David C. Singleton.
Matthew R. Shetley, Crow and Reynolds, Kennett, MO, for Don Cecil.
D. Keith Henson, Paule and Camazine, St. Louis, MO, for Harley Moyer, Ivan Parker, Kevin Tidwell, Della Price and City of Advance.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendants' motion for summary judgment. Plaintiff has not responded to the motion for summary judgment, and his time for doing so has expired. On the undisputed record produced here, it is clear that defendants are entitled to judgment as a matter of law, and the Court will therefore grant defendants' motion.
Plaintiff, a former police officer for the City of Advance, Missouri, brings his third *1165 amended complaint[1] in two counts, both claiming relief under 42 U.S.C. § 1983. In Count I plaintiff alleges that he was terminated from his employment as a City of Advance police officer "to silence [him] and discredit him to avoid the likelihood of public disclosure" of an allegedly fraudulent car purchase by the Chief of Police, defendant Don Cecil. He alleges that his termination "violated his rights of freedom of speech, of association and to acquire information, his right to due process of law, and the right of privacy ..." In Count II plaintiff alleges that he was terminated because of statements his wife and daughter made to each other in a tape-recorded telephone call, and he alleges that the termination violated his "protected rights of freedom of speech and association, right to privacy, and right to due process of law."

I. Undisputed Facts

Plaintiff David Singleton was employed by the City of Advance as a police officer from 1990 until his termination in March of 1994. At the times relevant to this suit defendant Don Cecil was the city's Chief of Police, and defendants Harley Moyer, Ivan Parker, Kevin Tidwell, and Della Price were elected members of the City Council. William Bradshaw, not named as a defendant, was the Mayor of Advance during the relevant time period.
On March 8, 1994, David George, a private investigator, was scanning radio frequencies with his radio scanner. While scanning channels to listen to conversations on cordless telephones, an activity that George considers to be "entertainment," George listened to a conversation between plaintiff's wife, Joann Singleton, and plaintiff's daughter, Sabrina Scaggs. During the conversation, plaintiff's wife made a statement indicating that she was going to "set up" Chief Cecil by hiring someone to bribe him. George decided to tape this conversation, and later that day he played the tape for Mayor Bradshaw and Chief Cecil. He gave a copy of the tape to Cecil.
Between March 9 and March 10, 1994, Cecil visited the members of the city council individually and played the tape for each member; all realized that the tape was of a conversation between plaintiff's wife and daughter. None of the council members discussed the tape with Mayor Bradshaw before he called a special meeting on March 11, 1994. At the special meeting, the council discussed plaintiff and the tape. Chief Cecil recommended that plaintiff be terminated. After consulting the city attorney regarding legal options available to them for dealing with the situation, all four members of the city council voted in favor of terminating plaintiff's employment as a police officer.
Several months before these events, both the City and the police chief had purchased automobiles through a Ford incentive program. The city council and mayor knew that Chief Cecil intended to purchase a vehicle individually through the incentive program, and believed there was nothing improper in his doing so. In early March 1994, Bradshaw received an anonymous letter concerning Cecil's purchase of the second automobile. The letter, which was signed "a concerned citizen," claimed that Cecil had illegally purchased the vehicle for his personal use. It is now undisputed that plaintiff's daughter sent the letter, although this was not known at the time of plaintiff's termination. Bradshaw showed the letter to Cecil and the city council members, but because Bradshaw did not feel that there were any irregularities in Cecil's purchase of the vehicle, he took no further action in the matter.
The city council did not discuss the letter at the March 11 meeting, and in fact never collectively discussed the letter or any alleged illegal activity involving Cecil and the car purchase. Moreover, neither Cecil nor the city council members knew of plaintiff's perception that Cecil had engaged in illegal or fraudulent activity regarding the automobile purchase or that plaintiff's daughter wrote the letter. Plaintiff received a letter confirming his termination on March 11, the same day as the meeting, and the letter *1166 provided no reasons for why plaintiff was terminated.
Plaintiff admits that he was unaware of the reason for his termination by the city on March 11, 1994, although he stated in his deposition that he assumed it was to "keep him quiet" about Cecil's alleged illegal activities. Plaintiff conceded in his deposition that he has no factual support for this assumption, other than the fact that he was not provided with a reason for his termination.

II. Discussion

In determining whether summary judgment should issue pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the facts, and the inferences from these facts, are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish the absence of a genuine issue of material fact and to show that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). If the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant is unable to make a showing sufficient to establish the existence of an element essential to its case. Lujan v. National Wildlife Federation, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).
Plaintiff brings this action pursuant to 42 U.S.C. § 1983, and he alleges that his discharge by the city violated his First Amendment rights, the due process clause of the Fourteenth Amendment, and his constitutional right to privacy. Although plaintiff's third amended complaint is far from a model of clarity, the gravamen of the constitutional claims is that plaintiff was discharged either because he intended to blow the whistle on Cecil's automobile purchase or because of his wife and daughter's conversation.
Plaintiff alleges that defendants terminated him in order to "keep him quiet" about Cecil's allegedly illegal activities, and that they therefore violated his rights to freedom of speech, association, and privacy. This claim sounds in retaliatory discharge. In deciding a claim of First Amendment retaliatory discharge, a court looks to (1) whether the employee's speech involves a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the government would have made the same employment decision in the absence of the protected conduct. Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979) (quoting Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)); see also Shands v. City of Kennett, 993 F.2d 1337, 1342-43 (8th Cir. 1993), cert. denied, 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994); Smith v. Cleburne County Hosp., 870 F.2d 1375, 1381-82 (8th Cir.), cert. denied, 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 100 (1989).
The Court need not decide whether plaintiff can show the first two elements, because the undisputed facts fail to show anything causally linking plaintiff's termination to his alleged protected expression. The undisputed evidence shows that defendants terminated plaintiff because they believed he and his family were conspiring to "set up" the police chief, and for no other reason. Plaintiff therefore cannot show any connection between the allegedly protected conduct (the planned whistleblowing regarding the car) and his termination. Plaintiff concedes in his deposition that he merely "assumed" that he was terminated because defendants wanted him to "keep him quiet" about his knowledge of Cecil's allegedly illegal actions. The only reason plaintiff had for assuming that he was retaliated against was that he was not provided with a reason for his termination. However, defendants' uncontradicted evidence establishes that the issue raised by the conversation between plaintiff's *1167 wife and daughter was the sole factor involved in his termination by the city, and that Cecil, Bradshaw, and the City Council members were unaware of plaintiff's allegations of illegal conduct on the part of Cecil when they unanimously voted to terminate him on March 11, 1994. Because there is no evidence showing a causal connection between plaintiff's purported protected activity and his termination, his claim of retaliatory discharge must fail. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576.
To the extent plaintiff is attempting to allege that he was deprived of procedural due process, that claim must also fail. According to Mo. Ann. Stat § 79.240 (Vernon 1987), appointive officers of fourth-class cities such as Advance are terminable at will by the mayor acting with the consent of a majority of the aldermen or by two-thirds of the aldermen acting independently of the mayor. Because the Missouri courts have consistently referred to police officers as "appointive officers," plaintiff did not have a liberty or property interest in his employment that implicated procedural due process. See Armer v. City of Salem, 861 F.2d 514, 515-16 (8th Cir.1988); State ex rel. Lupo v. City of Wentzville, 886 S.W.2d 727, 730-31 (Mo.Ct. App.1994).
Last, to the extent that plaintiff is alleging that his right to privacy or association was violated because the conversations of plaintiff's wife and daughter were recorded, the uncontroverted evidence establishes that the conversations were taped by George, who was not employed by the city and was not acting at the direction of anyone. Therefore, plaintiff's claim must fail. See Tyler v. Berodt, 877 F.2d 705, 706-07 (8th Cir.1989), cert. denied, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990) (holding that individuals could not maintain action against private citizens and law enforcement officers who intercepted individuals' cordless telephone conversations, as users of cordless telephone did not have justifiable expectation of privacy for their conversations); State v. King, 873 S.W.2d 905, 909 (Mo.Ct.App.1994); see also Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990) (holding that liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights). The uncontradicted evidence shows that the defendants had a legitimate, good faith belief that plaintiff, with his family, was engaging in improper conduct by conspiring to bribe the Chief of Police. Terminating him for this reason did not violate his constitutional rights.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for summary judgment [# 18] is granted.
IT IS FURTHER ORDERED that defendants' motion for enlargement of time to file pretrial materials is denied as moot.
NOTES
[1] The Court notes that defendants' motion for summary judgment refers to plaintiff's second amended complaint. The Court will interpret the motion as being directed to plaintiff's third amended complaint, which was filed on November 15, 1996.