# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1726

_____

| | | |
|---|---|---|
| David C. Singleton, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Don Cecil, Individually and in his | * | |
| official capacity as Chief of Police; | * | |
| Harley Moyer; Ivan Parker; Kevin | * | |
| Tidwell; Della Price; City of Advance, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 11, 1999
Filed: April 27, 1999

_____

Before BOWMAN, Chief Judge, McMILLIAN, RICHARD S. ARNOLD, FAGG,
    WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD
    ARNOLD, and MURPHY, Circuit Judges, En Banc.

_____

MAGILL, Circuit Judge.

Following the analysis of our sister circuits and Supreme Court precedent, we
affirm the district court's[1] holding that, in Missouri, an at-will employment state, a

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern
District of Missouri.

discharged municipal at-will employee does not have a section 1983 substantive due process occupational liberty interest under the Fourteenth Amendment.

## I.

A.     Facts

David Singleton worked for the City of Advance, Missouri as a police officer from 1990 until his termination in 1994. The City of Advance did not have a written employment agreement with Officer Singleton. Officer Singleton's employment was terminable at will, either by the mayor with approval of a simple majority of the city council, or by a two-thirds vote of the city council. See Mo. Ann. Stat. § 79.240 (1998); State ex rel. Lupo v. City of Wentzville, 886 S.W.2d 727, 730-31 (Mo. Ct. App. 1994). Neither state nor local law limited the reasons for which Officer Singleton could be discharged nor afforded him the right to a hearing in connection with his discharge. At the time of Officer Singleton's discharge, defendant Don Cecil was Advance's police chief, and defendants Harley Moyer, Ivan Parker, Kevin Tidwell, and Della Price were members of Advance's city council. William Bradshaw, the mayor of Advance, was not a named defendant.

During the period of his employment, Officer Singleton became concerned that Chief Cecil had abused an incentive program designed to facilitate government purchases by purchasing a car for his own benefit and use under the program.[2] Despite his belief that Chief Cecil had engaged in illegal activity, Officer Singleton never notified any law enforcement officials, the mayor, or the city council of his concern. On the morning of March 8, 1994, Officer Singleton's wife, Joann, called their

_____

[2]In fact, Mayor Bradshaw and the city council members had prior knowledge of the vehicle purchase and considered the car available for use by the city as a backup police vehicle.

daughter, Sabrina, on a cordless telephone. During the conversation, they began discussing Chief Cecil, and Joann said she wanted to "set up" Chief Cecil by hiring someone to bribe him. Unbeknownst to Joann and Sabrina, this statement was recorded by David George, a local private investigator who happened to be scanning radio frequencies at the time.[3] Later that day, George contacted Chief Cecil and Mayor Bradshaw and played the recorded conversation for them. George also gave Chief Cecil a copy of the recording. Chief Cecil then visited the members of the city council and played the recording for them individually. Each council member recognized Joann's and Sabrina's voices on the recording and, at a special meeting on March 11, 1994, they unanimously voted to terminate Officer Singleton's employment. They did not include a reason for discharging Officer Singleton in his termination letter. Nor did they publicly divulge any reason for the discharge.

Officer Singleton then initiated this suit under 42 U.S.C. § 1983 against Chief Cecil, the four council members, and the City of Advance. He alleged that his termination by the defendants violated his rights of free speech, due process, intimate association, and privacy. His free speech allegation rested on the premise that he was discharged in an effort to keep him silent concerning Chief Cecil's car purchase. In response, the council members divulged that they based the termination decision solely on Joann's plot to bribe Chief Cecil. The district court granted summary judgment in favor of the defendants on all of Officer Singleton's claims. Particularly, the district court concluded that Officer Singleton could not prevail on his free speech claim because he could not demonstrate any causal connection between Chief Cecil's car purchase and his termination. See Singleton v. Cecil, 955 F. Supp. 1164, 1166-67 (E.D. Mo. 1997). The district court also found that Officer Singleton could not prevail

---

[3]There is no contention on appeal that this interception was illegal or that George was targeting conversations between Joann and Sabrina. George testified that throughout March 1994, he monitored cordless phone channels in the City of Advance with his radio scanner "more or less" for entertainment purposes. Appellee's App. at 228.

on any procedural due process claims because, as an at-will employee, he had no liberty or property interest in his job.  See id. at 1167.  Finally, the district court held that Officer Singleton's claims that he was deprived of  his rights of intimate association and marital privacy failed because "the defendants had a legitimate, good faith belief that plaintiff, with his family, was engaging in improper conduct by conspiring to bribe the Chief of Police."  Id.

B.      Missouri At-Will Employment Law

Because the "Due Process Clause does not purport to supplant traditional tort law," Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992) (quotations omitted), and because property interests protected by the Due Process Clause are not created by the Constitution, but rather by independent sources such as state law, municipal ordinance, or contract, see Bishop v. Wood, 426 U.S. 341, 344 & n.7 (1976); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577-78 (1972); Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 718 & n.3 (8th Cir. 1995), we briefly set forth the pertinent Missouri law on at-will employment.  In this case, neither state law, municipal law, a collective bargaining agreement, or an employment contract afforded Officer Singleton any property interest in his job.  In contrast, as an at-will employee in Missouri, he could be discharged "for cause or without cause."  Dake v. Tuell, 687 S.W.2d 191, 193 (Mo. 1985).  Indeed, he could even be discharged "for no reason or for an arbitrary or irrational reason."  Shawcross v. Pyro Prods., Inc., 916 S.W.2d 342, 343 (Mo. Ct. App. 1995) (quotations omitted).

Notwithstanding the broad grant to employers of the power to fire at-will employees for any or no reason, Missouri law affords a discharged at-will employee such as Officer Singleton the ability to seek judicial redress.  Such an employee may assert a cause of action for tortious interference with employment against third-parties, i.e., non-employers such as George, for inducing the discharge.  See Stanfield v. National Elec. Contractors Ass'n, Inc., 588 S.W.2d 199, 202 (Mo. Ct. App. 1979); see

also Haddle v. Garrison, 119 S. Ct. 489, 492 (1998) (explaining that "third-party interference with at-will employment relationships . . . has long been a compensable injury under tort law"). He also may bring a tortious interference claim against his direct supervisor and employer if he presents "evidence eliminating any business justification at all for the termination." Eggleston v. Phillips, 838 S.W.2d 80, 83 (Mo. Ct. App. 1992). In addition, and despite the typical prohibition against bringing wrongful discharge claims, such an employee may allege that his discharge violated Missouri public policy. See Shawcross, 916 S.W.2d at 343. Officer Singleton has not attempted to assert any state law claims in this case.

## II.

On appeal, a divided panel of this court originally affirmed the district court in all respects. See Singleton v. Cecil, 133 F.3d 631, 635 (8th Cir.), vacated, 133 F.3d 631, 636 (8th Cir. 1998) (Singleton I). After granting Officer Singleton's petition for rehearing, the panel, with one judge dissenting, affirmed most of the district court's grant of summary judgment, but reversed on the sole ground that it believed the defendants deprived Officer Singleton of his occupational liberty, which was ostensibly protected by substantive due process. See Singleton v. Cecil, 155 F.3d 983, 986-90 (8th Cir.), vacated, 155 F.3d 983, 992 (8th Cir. 1998) (Singleton II).

In the course of reversing the district court, the panel majority conceded that Officer Singleton was not deprived of any life, liberty, or property interest that would support a procedural due process claim. See id. at 987, 989. Under Eighth Circuit law, this concession should have precluded Officer Singleton from proceeding on a substantive due process theory. See Weimer v. Amen, 870 F.2d 1400, 1405-06 (8th Cir. 1989) ("to the extent our cases recognize a constitutional right to substantive due process, that right is no greater than the right to procedural due process"); Buhr v. Buffalo Pub. Sch. Dist. No. 38, 509 F.2d 1196, 1202 (8th Cir. 1974); accord Clark v. Whiting, 607 F.2d 634, 641-42 n.17 (4th Cir. 1979) (absence of a liberty or property

interest in connection with a procedural due process claim is fatal to the plaintiff's purported substantive due process claim); Weathers v. West Yuma County Sch. Dist. R-J-1, 530 F.2d 1335, 1340-42 (10th Cir. 1976) (same); Jeffries v. Turkey Run Consol. Sch. Dist., 492 F.2d 1, 4 (7th Cir. 1974) (Stevens, J.) (same).

Nevertheless, the panel majority elected not to follow this authority. Acknowledging that "the Fourteenth Amendment does not create any generalized free-floating right against depriving someone of 'due process' in the abstract," Singleton II, 155 F.3d at 987, the panel majority held that Officer Singleton had a general "occupational liberty"--referred to as "the right 'to engage in any of the common occupations of life'"--that was entitled to substantive due process protection. Id. (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)). The panel majority then held that Officer Singleton had been deprived of his occupational liberty on two different bases: (1) by speculating that if the reason for discharging him became known then it might be difficult for him to secure employment as a police officer elsewhere, and (2) by holding that this occupational liberty conferred upon him the right to retain his particular job with the City of Advance. See id. at 988. Relying on cases such as Kelley v. Johnson, 425 U.S. 238, 248 (1976) and Lowman v. Davies, 704 F.2d 1044, 1046 (8th Cir. 1983), the panel majority also held that "if a government employer's decision or policy is so irrational that it may be branded arbitrary, an employee may plausibly assert that he has been denied his substantive due process rights under the Fourteenth Amendment." Singleton II, 155 F.3d at 986 (quotations omitted). According to the panel majority, the defendants deprived Officer Singleton of his occupational liberty by discharging him because of Joann's plot, and the notion of substantive due process absolutely barred the defendants from discharging Officer Singleton for this supposedly arbitrary or irrational reason.[4]

---

[4]The panel majority also concluded that the defendants' decision to discharge Officer Singleton was arbitrary and irrational. See Singleton II, 155 F.3d at 987.

At this time, we pause to note that neither <u>Kelley</u> nor <u>Lowman</u> involved an employee's occupational liberty in an at-will employment state, although both were decided under the rubric of substantive due process. Both of these cases dealt with the constitutionality of governmental regulations addressing the appearance--specifically the hair length--of governmental employees and the employees' assertions that these regulations violated "some sort of 'liberty' interest within the Fourteenth Amendment in matters of personal appearance." <u>Kelley</u>, 425 U.S. at 244; <u>see also</u> <u>Lowman</u>, 704 F.2d at 1045 (case involved an employee's alleged "freedom to govern one's personal appearance" (quotations omitted)). The Supreme Court even questioned whether any such liberty was protected by substantive due process, but was willing to assume so for purposes of the appeal. <u>See</u> <u>Kelley</u>, 425 U.S. at 244.[5]

## III.

Officer Singleton initially challenges the district court's conclusion that the defendants did not violate his substantive due process right of privacy in his marital relationship and his First Amendment right of intimate association. With respect to these challenges, we affirm the district court for the reasons expressed in the first panel opinion. <u>See</u> <u>Singleton I</u>, 133 F.3d at 634-35; <u>see also</u> <u>Singleton II</u>, 155 F.3d at 986.

---

[5]In the only Eighth Circuit case concluding that a public employee has a substantive due process right to be free from arbitrary and capricious discharge, <u>see</u> <u>Moore v. Warwick Pub. Sch. Dist. No. 29</u>, 794 F.2d 322, 329 (8th Cir. 1986), the employee had an undisputed property right in his continued employment. <u>See</u> <u>id.</u> at 326 (employee discharged during term of contractual employment). The <u>Moore</u> panel neither addressed nor considered any claim that an employee's "occupational liberty" would afford a substantive due process right to be free from arbitrary and capricious discharge.

## IV.

We hold that the defendants' alleged arbitrary and capricious firing of Officer Singleton, an at-will employee under Missouri law who could be discharged "for cause or without cause," Dake, 687 S.W.2d at 193, or "for no reason or for an arbitrary or irrational reason," Shawcross, 916 S.W.2d at 343 (quotations omitted), because of the conversation between his wife and daughter did not violate his substantive due process rights. To hold otherwise would be to disregard Supreme Court precedent and the decisions of our sister circuits, which hold that an employee's occupational liberty is not protected by substantive due process when the employee is discharged by a governmental employer. We would also be abusing § 1983 to intrude upon and second-guess at-will employment decisions made by state actors, notwithstanding the Supreme Court's admonishment that "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies" and "[t]he United States Constitution cannot feasibly be construed to require federal judicial review for every such error." Bishop, 426 U.S. at 349-50 (footnote omitted). Furthermore, we would be distorting the Constitution to supplant Missouri state law and create a federal tort regulating state employment decisions. Cf. Collins, 503 U.S. at 128 (explaining that "state law, rather than the Federal Constitution, generally governs the substance of the employment relationship" and the "Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society" (quotations omitted)).

The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. This clause has two components: the procedural due process and the substantive due process components. See County of Sacramento v. Lewis, 118 S. Ct. 1708, 1713 (1998). "Analysis of either a procedural or substantive due process claim must begin with an examination of the

interest allegedly violated," Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 445-46 (8th Cir. 1995), and "[t]he possession of a protected life, liberty, or property interest is . . . a condition precedent" to any due process claim. Movers Warehouse, 71 F.3d at 718; see also Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) ("a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property"). "[W]here no such interest exists, there can be no due process violation." Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir. 1997), cert. denied, 118 S. Ct. 1188 (1998). Merely labeling a governmental action as arbitrary and capricious, in the absence of the deprivation of life, liberty, or property, will not support a substantive due process claim. See Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 226 (1985) ("the Court has no license to invalidate legislation which it thinks merely arbitrary or unreasonable" (quotations omitted)); see also Nunez, 147 F.3d at 873 ("There is no general liberty interest in being free from capricious government action."); Valot v. Southeast Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1233 (6th Cir. 1997) (Ryan, J., concurring) ("merely to state that the Due Process Clause was 'intended to secure the individual from the arbitrary exercise of the powers of government' . . . does nothing to state a claim under the substantive component of the Due Process Clause"); Jeffries, 492 F.2d at 4 n.8 (Stevens, J.) (no general liberty interest in being free from arbitrary and capricious governmental action). "Thus, in the absence of a life, liberty or property interest [Officer Singleton] could be terminated for arbitrary and capricious reasons." Zorzi v. County of Putnam, 30 F.3d 885, 895 (7th Cir. 1994).

The only question here is whether Officer Singleton has been deprived of a "liberty" protected by substantive due process.[6] The substantive component of "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the

_____

[6]There is no dispute that Officer Singleton has not been deprived of either life or property.

concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" Washington v. Glucksberg, 117 S. Ct. 2258, 2268 (1997) (citations omitted).[7] Justice Powell articulated that "substantive due process rights are created only by the Constitution," unlike procedural due process rights which can be created by either state law or the Constitution. Ewing, 474 U.S. at 229 (Powell, J., concurring). For this reason, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994).

Officer Singleton suggests that the defendants, by discharging him from employment, have deprived him of his occupational liberty, which supposedly confers upon him the right to continued employment as a police officer with the City of Advance absent some nonarbitrary and rational reason for his discharge. Notably, this is not a situation where the government, as regulator, has somehow used its regulatory authority to deny a person the opportunity to pursue a chosen profession. Compare Roth, 408 U.S. at 575 (noting that "on the record before us, all that clearly appears is that the respondent was not rehired for one year at one university"), with Schware v. Board of Bar Exam'rs, 353 U.S. 232, 246-47 (1957) (government refused to license plaintiff as a lawyer, thus preventing plaintiff from working as a lawyer anywhere in the state). Rather, this case involves a governmental employer's decision to discharge an

---

[7]An alternative way to bring a substantive due process claim is to assert that the government's actions "either 'shock[] the conscience' or 'offend[] judicial notions of fairness . . . or . . . human dignity.'" Riley v. St. Louis County, 153 F.3d 627, 631 (8th Cir. 1998) (citations omitted), cert. denied, 119 S. Ct. 1113 (1999). In such a case, the plaintiff's "burden is to establish that the government action complained of is 'truly irrational,' that is, 'something more than . . . arbitrary, capricious, or in violation of state law.'" Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc) (quotations and citations omitted). Singleton has not, however, sought to prevail under this "shocks the conscience" theory, instead relying solely on the supposed existence and deprivation of his "fundamental" occupational liberty interest. Accordingly, we need not address the applicability of this theory to the facts of the present case.

at-will employee. Thus, we are dealing with the government acting "as [a] proprietor" that was managing "its own internal affairs" rather than as a "lawmaker" that was attempting "to regulate or license . . . an entire trade or profession, or to control an entire branch of private business." Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 896 (1961). "[I]t is crucial to note the distinction between 'legislative' acts" such as laws and regulations "and 'non-legislative' or 'executive' acts" such as employment terminations when analyzing substantive due process claims. McKinney v. Pate, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994) (en banc).

There is no suggestion that a right to continued employment with a particular governmental employer has "anything resembling 'the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life.'" Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198 (1979) (per curiam) (citation omitted). To the contrary, the Supreme Court has suggested that a public employee's interest in continued employment with a governmental employer is not so "fundamental" as to be protected by substantive due process.[8] See id. at 195-99. In Harrah, a school board

_____

[8]The dissent, quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923), asserts that we are ignoring the Supreme Court's assertion that "liberty includes the right 'to engage in any of the common occupations of life . . ..'" Post at 3. The Court recently explained that this liberty right to engage in an occupation extends to a person's ability to engage in a "field of private employment." Conn v. Gabbert, 67 U.S.L.W. 4222, 4224 (U.S. 1999) (No. 97-1802). The Court then made clear that this right has been afforded substantive due process protection only when the government "complete[ly] prohibit[s]," rather than "brief[ly] interrupt[s]," a person from engaging in his desired occupational field. Id. Moreover, the Court emphasized that this "right is simply not infringed by the inevitable interruptions of our daily routine as a result of legal process which all of us may experience from time to time." Id. Here, Officer Singleton, an at-will employee, has been discharged by his governmental employer from one specific job. This is an experience suffered by multitudes of persons, and there is no evidence that Officer Singleton has been stigmatized by his discharge or that he has been completely prohibited from working as a police officer in the future.

voted not to renew a tenured teacher's contract because she refused to comply with the board's continuing education requirements. See id. at 195-96. The teacher claimed that she had a liberty interest in not being discharged pursuant to that rule. See id. at 198. While acknowledging that the Due Process Clause "protects substantive aspects of liberty against impermissible governmental restrictions," id. at 197, the Court explained that the teacher's professed liberty interest was completely unrelated to "the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life." Id. at 198 (quotations omitted). In addition to its conclusion that the board's action was not arbitrary, the Court held that the teacher "neither asserted nor established . . . the deprivation of any fundamental constitutional right." Id. at 199.

Although the Court has not otherwise ruled on the applicability of occupational liberty and substantive due process in the context of a governmental employer's decision to discharge an employee, the Court's procedural due process decisions suggest that Officer Singleton's alleged occupational liberty is not protected by substantive due process. See Roth, 408 U.S. at 572-75; McElroy, 367 U.S. at 895-96. For example, the Court has explained that "state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." Collins, 503 U.S. at 128. The Court has also asserted that "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions" and "[t]he United States Constitution cannot feasibly be construed to require federal judicial review for every" allegedly erroneous decision. Bishop, 426 U.S. at 350. The Court has further exclaimed that "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." Id. at 349.

In Roth, a University president informed a non-tenured teacher that he would not be rehired for the next academic year but did not give any reason for the decision. See 408 U.S. at 568. While specifically recognizing that the term "liberty" included "the right . . . to engage in any of the common occupations of life," id. at 572 (quotations

-12-

omitted), the Court went on to hold that the University's decision did not implicate any liberty interest. See id. at 573. The Court explained that "in declining to re-employ the [teacher], [the University] imposed on him [no] stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Id. According to the Court, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he [is discharged from] one job but remains as free as before to seek another." Id. at 575.

In McElroy, the plaintiff was a cook who worked for a private employer on the premises of a naval base and lost her employment when the naval officer in charge of the base, without giving any reasons, withdrew her security clearance. See 367 U.S. at 887-88. When analyzing her claim, the Court explained that it "has consistently recognized that . . . the interest of a government employee in retaining his job[] can be summarily denied." Id. at 896. According to the Court, "[i]t has become a settled principle that government employment, in the absence of legislation, can be revoked at . . . will." Id.[9]

In further contrast to any assertion that Officer Singleton's alleged occupational liberty is so fundamental as to be protected by substantive due process, the Supreme Court has steadfastly refused to find a violation of the Due Process Clause when a

---

[9]Although the Court also "assume[d] that [the plaintiff] could not constitutionally have been excluded from [her job] if the announced grounds for her exclusions had been patently arbitrary or discriminatory," McElroy, 367 U.S. at 898, the Court made this assumption only in the context of an employee's ability to demand a procedural due process hearing. Id. The Court made no suggestion that an employee would be able to rely on "occupational liberty" to assert a substantive due process claim. Cf. McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc) ("Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component").

public employer discharges an employee for no reason, a bad reason, or even a false reason absent the employer's publication of stigmatizing information about the employee in connection with the discharge. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n.13 (1985) (summarily rejecting the "argu[ment] that [plaintiff] was unconstitutionally deprived of liberty because of the accusation of dishonesty that hung over his head" on the ground that plaintiff's "failure to allege that the reasons for [his] dismissal were published dooms this claim"); Codd v. Velger, 429 U.S. 624, 628 (1979) (per curiam) ("Since the District Court found that [the Plaintiff] had no Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question. Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is [a procedural] hearing [constitutionally] required." (footnote omitted)); Bishop, 426 U.S. at 348-50 (even if employer's reason for discharging at-will employee was false, employee still could not state a due process claim). In this case, it is undisputed that the defendants did not publicize any reason for discharging Officer Singleton until they were defending themselves in this litigation and there is no evidence in the record that Officer Singleton has been stigmatized. Regardless, even when the public employer divulges stigmatizing information about an employee in connection with that employee's discharge, the Court has only held that the employee's occupational liberty is afforded procedural due process protection. The Court has neither held nor intimated that the employee's occupational liberty is entitled to substantive due process protection.

Based on this Supreme Court case law, several of our sister circuits have refused to allow discharged public employees to proceed with substantive due process claims against their former employers, holding that "employment rights are not 'fundamental' rights created by the Constitution." McKinney, 20 F.3d at 1560; accord Zorzi, 30 F.3d at 895; Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1351 (6th Cir. 1992); see also Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir. 1989) ("no clearly established constitutional right to substantive due process protection of continued public

-14-

employment"); cf. Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir. 1991) (plaintiff's alleged "right to pursue her employment free from emotional health risks resulting from her supervisor's verbal harassment [does not] warrant[] substantive due process protection under the United States Constitution"). We agree with these circuits that the so-called "[o]ccupational liberty . . . is not protected by substantive due process. Rather, any cause of action for the deprivation of occupational liberty [is] confined to a claim under procedural due process; there is no such cause of action under substantive due process." Zorzi, 30 F.3d at 895 (citation omitted); see also McKinney, 20 F.3d at 1560 ("Supreme Court precedent demonstrates than an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component."); Roe v. Antle, 964 F. Supp. 1522, 1531-33 (D.N.M. 1997); Reinhart v. City of Maryland Heights, 930 F. Supp. 410, 413 (E.D. Mo. 1996); Rowe v. Board of Educ. of Chattanooga, 938 S.W.2d 351, 353 n.1 (Tenn. 1996).

An at-will public employee's "occupational liberty" should not be utilized as a vehicle for a federal court to interfere with employment decisions under the rubric of substantive due process, especially here, where the discharged employee has no right to procedural due process protection. A contrary conclusion would enable every discharged at-will public employee who has no heretofore recognized right to procedural due process to assert a constitutional claim and seek redress in federal court.[10] Indeed, if we were to hold that an employee's occupational liberty is afforded substantive due process protection in this case, that liberty should also be afforded

---

[10]Because every discharge would necessarily constitute the deprivation of an at-will employee's occupational liberty, each such employee could assert a viable substantive due process claim by merely alleging that his discharge was effected for arbitrary or irrational reasons.

procedural due process protection.[11]  Public at-will employees would then have the right to a hearing in connection with all discharge decisions so that they may ascertain whether the reasons for discharge were arbitrary or irrational.  This directly contradicts, if not outright vitiates, the Supreme Court's repeated assertions that an employee can be discharged for no reason, a bad reason, or a false reason without a hearing, and that an employee has no right to a hearing in the absence of a property right to his job or unless his employer publicly divulged a stigmatizing reason for the dismissal.  This also essentially abrogates the concept of at-will employment.  This would also require us to formulate, on a case-by-case basis, standards distinguishing bad and false reasons, for which an at-will public employee can be discharged, from arbitrary or irrational reasons.[12]  Indeed, "every time a [governmental employee] [was] affected by governmental action, he would have a federal right to judicial review."  Nunez, 147 F.3d at 874 (quotations omitted).  We would be forced to assume a role that we usually resist--that of a "super-personnel department[] second-guessing the wisdom of . . . personnel decisions," Hill v. St. Louis Univ., 123 F.3d 1114, 1120 (8th Cir. 1997) (quotations omitted), notwithstanding the Court's admonishment that "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."  Bishop, 426 U.S. at 349.

Even if we were to assume that occupational liberty is sufficiently fundamental to qualify for substantive due process protection, we cannot accept the proposition that the defendants deprived Officer Singleton of that liberty.  In the context of a governmental employer's decision to discharge an employee, the Supreme Court, in a

---

[11]If occupational liberty is so fundamental as to be protected by substantive due process in the context of a public employer's discharge decision, that occupational liberty would also be protected by procedural due process.

[12]The other option would be to allow juries to decide whether an employer's decision to discharge an at-will employee was arbitrary.  However, this would further eviscerate the concept of at-will employment by allowing each discharged employee to seek peer review of the decision.

-16-

procedural due process case, has defined the term "occupational liberty" as the "freedom to take advantage of other employment opportunities." Roth, 408 U.S. at 573. According to the Court, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he [is discharged from] one job but remains as free as before to seek another." Id. at 575. "This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge." Bishop, 426 U.S. at 348. Indeed, "the right to follow a chosen trade or profession" is not constitutionally deprived when a plaintiff, notwithstanding an adverse employment action, "remain[s] entirely free to obtain employment" or "to get any other job" in his chosen trade. McElroy, 367 U.S. at 895-96.

It has been suggested that the defendants imposed a stigma upon Officer Singleton when they discharged him.[13] Certainly, the mere fact that he was discharged, while it "might make him somewhat less attractive to some other employers[,] would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" Roth, 408 U.S. at 574 n.13. Although the actual reason for Officer Singleton's discharge could possibly inhibit Officer Singleton's ability to secure employment in the future as a police officer, this reason was never publicly divulged until the defendants communicated it to Officer Singleton during this lawsuit. Because the "communication was made in the course of a judicial proceeding which did not commence until after [he] had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim." Bishop, 426 U.S. at 348. Moreover, there is no evidence in the record to suggest that the reason for Officer Singleton's discharge has ever been made public outside of these proceedings or that it has impacted his ability to secure other employment.

_____

[13]Officer Singleton has not made this specific contention in connection with his substantive due process claim and the record is bereft of any evidence of stigma. He instead seeks to prevail on the bases that (1) he was discharged and (2) the discharge decision was arbitrary and irrational.

# V.

For the foregoing reasons, we AFFIRM the judgment of the district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring.

I agree with Judge Richard S. Arnold's admirably lucid statement of the applicable law, which, distilled, is that a person has a constitutional right to be free from government action that is so arbitrary that it shocks the conscience. For me, therefore, the question reduces itself to whether Mr. Singleton's treatment in the circumstances of this case is shocking to the conscience in the constitutional sense. I conclude that it is not.

It would have been an act of considerable disloyalty on Mr. Singleton's part to connive in his wife's scheme, or fail to try to dissuade her from it. It would, moreover, not have been unreasonable to suspect that Mr. Singleton was guilty of one or both of these acts, and I cannot conclude that it would be irrational to take action against someone who was reasonably suspected of disloyalty. I stress the point that the proper inquiry is whether Mr. Singleton's employment could rationally have been terminated, not whether the defendants could have proved that he was in fact disloyal. If a reasonable suspicion motivates an act, the act cannot be irrational; and it is not unreasonable to suppose that a man or a woman knows what his or her spouse is up to. In fact, the Supreme Court has pointed out that a governmental act similar to the one complained of here was reasonable because it "precludes evasions by dispensing with the necessity of judicial inquiry as to collusion between the wrongdoer and the alleged innocent" party. *Van Oster v. Kansas*, 272 U.S. 465, 467-68 (1926).

Since terminating Mr. Singleton's employment was not objectively irrational, it passes constitutional muster. Suppose, though, that the defendants fired Mr. Singleton, not because they suspected him of collusion on some level, but simply because of what

-18-

his wife did; and suppose that I am wrong in assuming that the constitutional inquiry is an objective one, that is, one that does not focus on the defendants' actual subjective motive. I would still not find that the defendants acted illegally. For one thing, firing Mr. Singleton for his wife's acts rationally serves the legitimate purpose of ensuring that officers conscientiously monitor and police their spouses' actions. It is rational, moreover, to fire Mr. Singleton in order to punish his wife and discourage further unwanted behavior on her part. Finally, it is rational to terminate Mr. Singleton's employment as a kind of retribution against his wife, even if it did not discourage further unwanted conduct. Retribution may be out of favor, but it is hardly irrational. Indeed, whole societies have organized their legal systems around the idea.

One or perhaps all of these motivations may strike many as mean-spirited or even immoral. Since they are not irrational, however, they are not unconstitutional, and the present case can serve, as Mr. Justice Thomas put it in a similar case, as "a reminder that the Federal Constitution does not prohibit everything that is intensely undesirable." *See Bennis v. Michigan*, 516 U.S. 442, 454 (1996) (concurring opinion).

I therefore concur in the judgment of the court.

RICHARD S. ARNOLD, Circuit Judge, with whom McMILLIAN and WOLLMAN, Circuit Judges, join, dissenting.

Officer Singleton did not have a fixed term of employment. He was an at-will employee. When he was fired, the city did not, until after litigation had commenced, give any reason for its action. Accordingly, Mr. Singleton had neither a "property interest" nor a "liberty interest" as those phrases have come to be understood in due-process jurisprudence. He has no procedural-due-process claim. He is not entitled to any kind of a hearing with respect to his discharge. The Court today holds that Mr. Singleton therefore, and automatically, has no substantive-due-process claim, no matter what reason the city had or gave for firing him. He could be fired for what his

wife and daughter said to each other. He could be fired because his name starts with an "S." He could be fired because of the color of his hair. In none of these instances would the Due Process Clause of the Fourteenth Amendment pose any obstacle.

In my view, this holding is based on a fundamental misunderstanding of the Due Process Clause as it has been interpreted for over a century by the Supreme Court. I therefore respectfully dissent. I have already attempted, at some length, to explain my reasoning, see Singleton v. Cecil, 155 F.3d 983 (8th Cir. 1998) (opinion for the panel); Singleton v. Cecil, 133 F.3d 631, 635 (8th Cir. 1998) (opinion dissenting from the first panel decision), and will try not to repeat myself here.

The Due Process Clause declares that no state shall deprive any person of life, liberty, or property without due process of law. The words sound entirely procedural and could well have been interpreted that way, but that has not been the course of the law. The Supreme Court has traditionally recognized two kinds of due-process claims, substantive and procedural. Procedural-due-process claims are what they sound like – claims that a plaintiff has been deprived of something without the proper procedure. The claim is not that the plaintiff has a right to keep the thing in question at all events, but rather that the state cannot deprive him of it without some sort of hearing, either before or after the deprivation. The "property interest" and "liberty interest" concepts were developed in this context, and they make sense. In the case of the employment relationship, a "property interest" arises out of a contract that provides that I have a right to keep my job for a certain period of time, at least in the absence of misconduct or other specified circumstances. The "liberty interest" concept refers to the interest in my own reputation, and embodies the right not to be stigmatized at the time of discharge, unless some sort of fair procedure establishes that the stigma is appropriate.

Substantive due process, on the other hand, has nothing to do with procedures, hearings, contracts of employment for fixed periods, stigmatizing reasons for dismissal, or any other particularized kind of governmental conduct. The concept is much more

-20-

general. As the Supreme Court has recently explained, a substantive-due-process violation takes place when governmental power is exercised arbitrarily and oppressively. <u>City of Sacramento v. Lewis</u>, 118 S. Ct. 1708, 1716 (1998). "[T]he substantive due process guarantee protects against government power arbitrarily and oppressively exercised . . .." <u>Ibid</u>. The Court's opinion in <u>Lewis</u> cites cases all the way back to 1819 to support this interpretation of the meaning of due process. See, <u>e.g.</u>, <u>Bank of Columbia v. Okely</u>, 4 Wheat. 235, 244 (1819): due process is "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." The concept is a general one. It is not susceptible of detailed formulation. It cuts across all limiting categories. The core of the idea is not that government can deprive me of the thing in question only if it follows certain procedures, but rather that government cannot, for the reasons given, deprive me of the thing in question at all. "Substantive due process" is certainly controversial, historically and academically, but the idea is firmly fixed in our jurisprudence.

The doctrine, to be sure, is not wholly disembodied from the words of the Fourteenth Amendment (or the Fifth, as the case may be). There is no free-floating right to due process. There is a right, instead, not to be deprived, without whatever process is due, of "life, liberty, or property." Life and property are not at issue here. Liberty is. The Court's position is that an at-will employee who is not discharged for a stigmatizing reason simply has no due-process claim, however arbitrary, egregious, or oppressive the conduct of his employer may have been.

The Supreme Court's cases are wholly at odds with this conclusion. "Liberty," as that term is used for substantive-due-process purposes, has never been a tightly controlled analytical concept. As the Court said in <u>Bolling v. Sharpe</u>, 347 U.S. 497, 499-500 (1954), "[l]iberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective." More particularly, liberty includes the right "to engage in any of the

-21-

common occupations of life . . .." <u>Meyer v. Nebraska</u>, 262 U.S. 390, 399 (1923). The Supreme Court's employment cases make this clear. <u>Cafeteria & Restaurant Workers Union v. McElroy</u>, 367 U.S. 886 (1961), is a good example. The plaintiff was a short-order cook who lost her job when her security clearance was withdrawn. She was not deprived of anything beyond that particular job, but all nine members of the Court were nevertheless agreed that she was protected, in the substantive sense, from conduct that was patently arbitrary. <u>Id.</u> at 898. The case was mainly about procedural due process, and the plaintiff lost her case, but not because the Court thought she had not been deprived of "liberty." Rather, in the Court's view, plaintiff had received all the process that was due. The reason given for her discharge, the withdrawal of a security clearance, was certainly not arbitrary, and, under all the circumstances, the Court felt that no hearing or other special procedure was necessary.

Another good example is <u>Harrah Independent School District v. Martin</u>, 440 U.S. 194 (1979) (per curiam). This Court today cites <u>Harrah</u> as authority for its own position, see <u>ante</u> at 11, but, and I say this respectfully, the Court is simply wrong. <u>Harrah</u> was a case brought by a public-school teacher. She had been discharged for failure to comply with certain continuing-education requirements. She alleged that the application of these requirements to her was arbitrary and capricious, in the constitutional sense. The Supreme Court disagreed, explaining that the reasons given were not at all arbitrary. Plaintiff asserted both procedural and substantive theories under the Due Process Clause. Because she was a tenured teacher, and could be dismissed only for specified reasons, she was entitled to a hearing to determine whether any such reasons existed, and she had received that hearing. Her procedural claim was therefore rejected. Her substantive-due-process claim was then treated separately and also rejected, on the ground that the policy being applied to her was not irrational. The fact that the plaintiff had "tenure," or a fixed contract of employment, was not mentioned at all in the course of the substantive-due-process analysis. Instead, the Court confronted and squarely decided the question whether the discharge had been arbitrary or irrational.

-22-

If there is any doubt as to my reading of Harrah, it should be dispelled by Judge Bowman's opinion in Moore v. Warwick Public School District No. 29, 794 F.2d 322 (8th Cir. 1986).  Moore was also a case brought by an employee of a school district. He alleged two things:  first, that because he had a one-year contract of employment, he was entitled to some sort of pre-termination process; and second, as a substantive-due-process claim, that he had been discharged for arbitrary  and capricious reasons. We held that the latter theory stated a claim under the substantive aspects of the Due Process Clause.  Harrah, we thought, was controlling on the point.  When the Supreme Court formulated a rational-basis standard and reached the merits of Harrah's claim, we said, "the Court necessarily recognized a substantive due process right to be free from arbitrary and capricious state action in this particular context."  794 F.2d at 329. Nothing in our discussion of the substantive-due-process claim indicated that it turned on the fact that plaintiff had a property interest in his job.  That fact was simply irrelevant.

The Court is concerned, and with good reason, about the breadth of this concept. If substantive due process is interpreted without a high degree of discretion and restraint, it will in due course engulf the whole world of the law.  For this reason, both the Supreme Court and this Court have emphasized the necessity of great judicial restraint.  In order to violate the Due Process Clause, governmental action must be more than merely "arbitrary" in some general or logical sense, more than merely "arbitrary and capricious" in the commonly accepted administrative-law sense of that phrase.  The action must be "arbitrary in the constitutional sense," Collins v. Harker Heights, 503 U.S. 115, 129 (1992) (emphasis supplied).  "[F]or half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience. . . . [T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' " County of Sacramento, supra, 118 S. Ct. at 1717, quoting Collins, supra, 503 U.S. at 128.

This Court has made the same point several times. In the zoning context, for example, we have distinguished between what might be called ordinary administrative-law allegations that a certain governmental action is arbitrary and capricious, and decisions that are truly irrational:

> [S]ubstantive-due-process claims should be limited to "truly irrational" governmental actions. An example would be attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet.

Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992), quoting Lemke v. Cass County, Nebraska, 846 F.2d 469, 472 (8th Cir. 1987) (en banc) (Richard S. Arnold, J., concurring, in an opinion joined by half of the ten-member en banc Court). The solution to what might be called substantive-due-process sprawl is not to close the door of the courthouse entirely. It is, instead, to be very careful about the circumstances in which the door is opened.

In an attempt, perhaps, to soften the blow, today's opinion for the Court en banc tries to draw a distinction between what it sees as two kinds of substantive due process: the existence of a " 'fundamental' occupational liberty interest," the theory which, the Court says, plaintiff advances in this case, on the one hand, and the claim that governmental action shocks the conscience or offends judicial notions of fairness or human dignity, or, to use another formulation, is truly irrational, on the other hand. Ante, at 10 n.7. If these are true distinctions, the law appears to be choking on its own verbal formulations. But, in fact, they are not. They are only ways of restating the same thing, using slightly different legal formulations. As the Supreme Court observed in County of Sacramento, in a passage already quoted, an action which is arbitrary, in the constitutional sense, and which, therefore, violates the Due Process Clause, is something that shocks the judicial conscience. Arbitrariness and conscience-shocking are not two different things. The Court implies that if Mr. Singleton had alleged that

-24-

his discharge shocked the judicial conscience, or was truly irrational, he might have a case, despite the absence of a property or liberty interest. If this is a real distinction, it can truly be said that the en banc mountain has labored and brought forth a mouse. In fact, neither the plaintiff nor any of the previous opinions taking his side in this case have used the term "fundamental occupational liberty interest," nor would it have mattered if they had. All of these formulations are admittedly imprecise (because there is no way of being precise about the subject) ways of saying the same thing: governmental action which inflicts upon the citizen any grievous wrong is unconstitutional under the Due Process Clause of the Fourteenth Amendment if it is utterly lacking in rational basis or fundamentally unfair for some other reason.

At no time does the Court today defend the reason given by the city for Mr. Singleton's discharge. It simply rejects his suit because his job does not fit either the "property interest" or "liberty interest" categories, concepts which, as I have tried to show, make sense only with respect to procedural-due-process claims. "[T]he concepts of liberty and property interests are . . . useful solely in the context of procedural due process." Meis v. Gunter, 906 F.2d 364, 369 (8th Cir. 1990).

I respectfully dissent.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


-25-