# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1726EM

_____

| | | |
|---|---|---|
| David C. Singleton, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | On Appeal from the United |
| Don Cecil, Individually and in his | * | States District Court |
| official capacity as Chief of Police; | * | for the Eastern District |
| Harley Moyer, Ivan Parker, Kevin | * | of Missouri. |
| Tidwell, Della Price, Individually | * | |
| and in their official capacities as | * | |
| Aldermen; and the City of Advance, | * | |
| Missouri, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 18, 1997
Resubmitted: March 6, 1998
Filed: September 15, 1998

_____

Before RICHARD S. ARNOLD,[1] Chief Judge, McMILLIAN and MAGILL, Circuit
Judges.

_____

[1] The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

RICHARD S. ARNOLD, Chief Judge.

David Singleton appeals the District Court's entry of summary judgment in favor of the City of Advance, Chief of Police Don Cecil, and four Advance City Council members, on his claim under 42 U.S.C. § 1983 (1994) that his termination as an Advance police officer violated his rights to free speech, association, privacy, and due process. After briefing and oral argument, we affirmed the judgment, one judge dissenting. See Singleton v. Cecil, 133 F.3d 631, 636 (8th Cir. 1998). We then granted Mr. Singleton's petition for rehearing, thus vacating the original panel opinion and judgment. We have now reconsidered the case. We hold that dismissal of a public employee on the sole basis of a conversation between his wife and daughter is wholly arbitrary, and violates the Due Process Clause of the Fourteenth Amendment.

In 1990, David Singleton and his wife Joann moved to Advance, Missouri, and David took a job as a police officer with the City of Advance. At the time David Singleton worked for the City of Advance, Don Cecil was the Chief of Police, and Harley Moyer, Ivan Parker, Kevin Tidwell, and Della Price were the four members of Advance's City Council. William T. Bradshaw served as Advance's Mayor in 1993 and 1994. The Singletons' daughter, Sabrina Scaggs, also lived in Advance at this time.

Joann Singleton frequently talked with Sabrina on the phone in the mornings, and Sabrina often spoke to her mother on a cordless phone. On the morning of March 8, 1994, a local private investigator named David George was scanning radio frequencies with a radio scanner and happened to pick up a conversation between Joann and Sabrina. In this conversation, Joann said that she could "set up" Chief of Police Don Cecil by hiring someone to bribe him. George recorded the conversation between Sabrina and Joann.

Later that day, David George contacted Chief of Police Cecil and Mayor Bradshaw and played the recording of the conversation for them. George also provided Cecil with a copy of the recording. Cecil then visited the homes of each of the City Council members and played the recording for them. The Council members recognized the voices on the recording as belonging to Joann Singleton and Sabrina Scaggs. On March 11, Mayor Bradshaw called a special meeting of the City Council to discuss the recording. The Council members were upset (as well they should have been) that David Singleton's wife and his daughter had discussed attempting to bribe Cecil, and Cecil recommended that the City Council terminate Singleton as an Advance police officer. City Attorney Donald Rhodes advised the City Council that as an at-will employee, Singleton could be discharged without cause and without a hearing. All four members of the Council then voted in favor of terminating Singleton. Under Missouri law, this vote was sufficient to terminate Singleton's employment with the City. See Mo. Ann. Stat. § 79.240 (1998). Each City Council member later submitted an affidavit stating, "My decision to terminate [David Singleton] was based upon the statements in the conversations on the tape recording about setting up Chief of Police Cecil by having someone try to bribe him, and nothing else." Appellees' App. at 135, 140, 145, 150. Singleton was informed that he was discharged in a letter dated March 11, 1994, the day of the Council meeting.

David Singleton filed this suit against Chief Cecil, the four City Council members, and the City of Advance. Singleton alleged under 42 U.S.C. § 1983 that his termination by the defendants violated his rights of free speech and association, due process, and privacy. He also claimed that he was terminated in retaliation for his knowledge of some of Chief Cecil's allegedly illegal activities. The District Court granted summary judgment in favor of the defendants on all of Singleton's claims. Specifically, the District Court held that Singleton's retaliatory-discharge claim failed because he could not demonstrate any causal connection between the purported protected activity and the termination. Singleton v. Cecil, 955 F. Supp. 1164, 1166-67 (E.D. Mo. 1997). The Court also held that any claim of a denial of procedural due

process failed because, as an at-will employee, Singleton had no liberty or property interest in his job. Id. at 1167. Finally, the District Court held that Singleton's claim that his rights of intimate association and marital privacy were denied also failed, because "the defendants had a legitimate, good faith belief that plaintiff, with his family, was engaging in improper conduct by conspiring to bribe the Chief of Police." Id.

We agree with most of the reasoning of the original panel opinion, which affirmed the District Court's rejection of Singleton's arguments that the actions of the Advance City Council and Chief Cecil infringed on his rights to intimate association and marital privacy. See Singleton v. Cecil, 133 F.3d at 634-35. However, Singleton raised another argument on appeal, not explicitly addressed in the first panel opinion. Singleton argued that he was discharged solely because of statements made by his wife, and that dismissal for this reason was arbitrary, capricious, and violative of his substantive-due-process rights. See Appellant's Br. at 14-15, which makes this argument quite clearly:

> Under these circumstance [sic] it is clear that the sole motivation for discharging David Singleton was the fact that his wife had made a statement which angered and "upset" the Council members. . . . That is precisely the kind of arbitrary and capricious logic that fails to pass even the most relaxed scrutiny of under [sic] substantive due process.

We agree with this argument and, accordingly, we now reverse the judgment of the District Court and remand for further proceedings.

The Fourteenth Amendment prevents state governments from depriving "any person of life, liberty, or property, without due process of law . . .." The Due Process Clause has long been held to prevent irrational or arbitrary actions by government

officials. See County of Sacramento v. Lewis, 118 S. Ct. 1708, 1716-17 (1998); Schware v. Board of Bar Examiners, 353 U.S. 232, 239 (1957); Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992) ("[S]ubstantive-due-process claims should be limited to 'truly irrational' governmental actions. An example would be attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet.") The constitutional guarantee against arbitrary state action is part of the Due Process Clause's "substantive sphere," as opposed to its guarantee of fair procedures. County of Sacramento, 118 S. Ct. at 1713. In cases involving the termination of government employees, federal courts are not to review every error in "the multitude of personnel decisions that are made daily by public agencies." Bishop v. Wood, 426 U.S. 341, 349 (1976) (footnote omitted). However, if a government employer's decision or policy is "so irrational that it may be branded 'arbitrary,' " an employee may plausibly assert that he has been denied his substantive due process rights under the Fourteenth Amendment. Kelley v. Johnson, 425 U.S. 238, 248 (1976) (citation omitted). See Lowman v. Davies, 704 F.2d 1044, 1046 (8th Cir. 1983).

This is one of those rare cases in which, on the basis of the facts in the record now before us, a government employee can plausibly argue that he has been denied substantive due process because his employer's actions in terminating him were irrational and arbitrary. The evidence in this case establishes that David Singleton was terminated because of the conversation between Joann Singleton, his wife, and Sabrina Scaggs, his daughter, about bribing Chief of Police Don Cecil. In affidavits, each City Council member who voted to discharge Singleton stated that he or she decided to terminate Singleton on the basis of David George's taped recordings, "and nothing else." Appellees' App. at 135, 140, 145, 150. As the defendants noted in their motion for summary judgment, all the evidence in this case "establishes that [Singleton] was terminated solely for the statements made in the taped conversation." Appellees' App. at 73. In granting summary judgment in favor of the defendants, the District Court said that "uncontradicted evidence" showed that the defendants had a "legitimate, good faith

belief" that Singleton was improperly conspiring to bribe Cecil. 955 F. Supp. at 1167. Evidence to that effect would make a big difference in this case, but the City Council members never testified to any such legitimate, good-faith belief, and we can find no evidence to that effect in the record. Therefore, it seems that the City Council terminated Singleton simply because of the conversation between his wife and daughter.

In this country, guilt is individual. We do not, as a general rule, punish A for the sins of B. Nor does the law today generally impute the actions of one spouse to another, or the actions of an adult child to the parent. See Forbes v. Arkansas Educ.Television Comm'n, 93 F.3d 497, 501-02 (8th Cir. 1996) ("We do not think any general inference can be drawn from the opinion of one spouse to that of the other."), rev'd on other grounds, 118 S. Ct. 1633 (1998). At common law, a husband was held responsible for any crimes committed by his wife in his presence, because the law presumed that the wife was coerced or controlled by her husband. See Haning v. United States, 59 F.2d 942, 943 (8th Cir. 1932). Modern courts have rejected this presumption. Id. See United States v. Dege, 364 U.S. 51, 53 (1960) (opining that this common-law rule "implies a view of American womanhood offensive to the ethos of our society"). At common law, a husband was also responsible for his wife's torts. Modern courts have rejected the idea that spouses are liable for one another's torts without proof that both spouses are involved in the tortious misconduct. See Petersen v. Heflin, 163 Mich. App. 402, 408, 413 N.W.2d 810, 812 (1987) (holding that a wife is not liable, simply by virtue of the marital relationship, for her husband's negligent acts); Dodson v. Anderson, 710 S.W.2d 510, 512 (Tenn. 1986) (holding that a wife is not liable, simply by virtue of the marital relationship, for her husband's fraudulent acts). And courts have held that a parent is not responsible for a child's torts by virtue of the parental relationship alone. See Nat'l Dairy Prod. Corp. v. Freschi, 393 S.W.2d 48, 53 (Mo. App. 1965); Lane v. Chatham, 251 N.C. 400, 401, 111 S.E.2d 598, 600 (1959). As we noted above, there is no evidence in this case that David Singleton was involved with the plot to bribe Chief of Police Cecil. Given the absence of proof of this

crucial fact, and given the modern view that the marital and parental relationships alone may not be used to impute liability for misconduct, we hold that it is irrational and arbitrary to presume that someone is involved with a conspiracy, merely because he is related to the conspirators.

We also hold that the City officials' arbitrary conduct deprived Singleton of his liberty, as that term is used in the Due Process Clause of the Fourteenth Amendment. We readily acknowledge that the Fourteenth Amendment does not create any generalized free-floating right against depriving someone of "due process" in the abstract. The Amendment itself states: "No State . . . shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." It is sometimes said that persons claiming a violation of this Clause must show that they have been "deprived of due process," but this shorthand statement, though perhaps acceptable in colloquial speech, is manifestly inaccurate. What one has to be deprived of is either life, liberty, or property. Otherwise, it does not matter whether one has received due process or not. In the present case, Mr. Singleton does not claim that the City of Advance, Missouri, has taken either his life or his property. He was an at-will employee of the City and therefore had no property right in his job as a police officer. Therefore, in order to establish a claim, plaintiff has to show that he has been deprived of "liberty" as that term is used in the Fourteenth Amendment.

This "liberty" has long been understood to include the right "to engage in any of the common occupations of life . . . ." Meyer v. Nebraska, 262 U.S. 390, 399 (1923) (citing cases). "The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest by . . . action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect." Id. at 399-400. More recent cases are in accord. In Schware v. Board of Bar Examiners, 353 U.S. 232 (1957), the Court, speaking through Mr. Justice Black, hardly a fan of "substantive due process," had this to say:

A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. . . . Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards . . .."

Id. at 238-39. The point is underscored in a footnote:

We need not enter into a discussion whether the practice of law is a "right" or "privilege." Regardless of how the State's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons.

Id. at 239 n.5.

In the present case, the reason ultimately given by the defendants for discharging Mr. Singleton – that his wife and daughter were conspiring to bribe the Chief of Police – would doubtless, if it became known, make it very difficult, if not impossible, for him to secure employment as a police officer with any other city. A new employer would probably think, contrary to the facts so far established in this case, that the City of Advance had some good reason to believe that Mr. Singleton was involved in the plot. But even if the only consequence were the loss of this particular job, a due-process claim would still be stated under the authoritative precedents of the Supreme Court. In Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886 (1961), the plaintiff was a short-order cook at a cafeteria operated by a private employer on the premises of a naval base. She lost her employment when the naval officer in charge of the base, without giving reasons, withdrew her security clearance. The employee ultimately lost her case, but not on account of any notion that she had not been deprived

-8-

of "liberty" when she lost her job. The Court stressed that the plaintiff had lost nothing beyond the opportunity to work in a particular military installation, but it held, nonetheless, that " 'constitutional protection does extend to the public servant whose exclusion . . . is patently arbitrary or discriminatory.' " Id. at 897, quoting Weiman v. Updegraff, 344 U.S. 183, 192 (1952). The Court went on to draw a distinction between substantive and procedural due-process rights:

> We may assume that Rachel Brauner could not constitutionally have been excluded from the Gun Factory if the announced grounds for her exclusion had been patently arbitrary or discriminatory – that she could not have been kept out because she was a Democrat or a Methodist. It does not follow, however, that she was entitled to notice and a hearing when the reason advanced for her exclusion was, as here, entirely rational . . ..

Id. at 898.[2]

It is suggested that because Mr. Singleton had no property right in the job, and because no stigmatizing reason was given for his dismissal at the time it occurred, that he has no "liberty interest" and therefore no right to due process. Buhr v. Buffalo Public School District No. 38, 509 F.2d 1196 (8th Cir. 1974), is cited in support of this proposition, and we concede that the citation is apt. In that case, Delores Buhr, a fifth-grade teacher at a public school in North Dakota, claimed, among other things, that the school board had discharged her arbitrarily. She alleged violations of both substantive and procedural due process, under the Fourteenth Amendment. The school board had

---

[2]McElroy was a 5-to-4 opinion. But on the point that is relevant for present purposes, the Court was unanimous. The dissenting opinion refers unequivocally to "the substantive right – not to be arbitrarily injured by Government – which the Court purports to recognize." Id. at 900 (Brennan, J., dissenting).

found that Ms. Buhr, a nontenured teacher, had caused emotional and nervous stress on the part of some students (a reason that, on its face, is not arbitrary). Ms. Buhr asserted that this finding was without support. In rejecting this claim, a panel of this Court held that the plaintiff had not been deprived of "liberty" as that term is used in the Fourteenth Amendment. In the absence of a property interest in the job, or a stigmatizing reason for dismissal, announced at the time of the employment action itself, our panel said, no right to substantive due process arises.

Ordinarily, we would be bound by Buhr. One panel of this Court may not overrule a holding of another panel. The Buhr Court itself, however, acknowledged that within this Circuit "substantive due process claims have spawned two distinct views," one of which "seems to suggest that substantive due process is . . . violated whenever a state acts to the detriment of an individual in a manner that is arbitrary or capricious." Id. at 1201 (footnote omitted). The Buhr opinion goes on to cite, id. at 1201 nn.4, 5, cases of this Circuit on both sides of the question. The Buhr panel selected the line of cases holding that there is no right against arbitrary discharge. We do not think this obligates our panel to make the same choice. Buhr was not an en banc opinion. When there are two lines of authority, a panel is free to select the one it believes to be correct. We choose the older, more traditional line, exemplified by the Supreme Court cases cited in this opinion. The concept of substantive due process is certainly open to question. Indeed, the Buhr Court, id. at 1201, appeared to believe that substantive due process was a thing of the past. The Supreme Court, however, believes otherwise, and we are bound by its pronouncements. We do not hesitate to affirm that the concept of substantive due process should be carefully limited and applied with great restraint. This is not at all the same thing, however, as saying that the doctrine no longer exists. It clearly does.

We concede that Mr. Singleton has no "liberty interest" as that term is used in procedural-due-process cases. He had no constitutional right to a hearing in connection with his discharge. Indeed, a hearing would have no purpose. We know the reason for

the discharge, and Mr. Singleton does not deny that the conversation between his wife and daughter took place.  If the City had taken the position that Mr. Singleton was a co-conspirator with his wife and daughter, a hearing might have been held on that point, but the members of the City Council have never made any such assertion.  The concept of "liberty interest," as it has grown up in procedural due process cases, beginning with Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972), simply has no application to the present situation.  What matters is not whether there is a "liberty interest" for purposes of procedural due process in cases of a discharge for stigmatizing reasons, but rather the right to work at a lawful occupation is part of the "liberty" protected by the Fourteenth Amendment.  As this Court expressly stated in Meis v. Gunter, 906 F.2d 364, 368 (8th Cir. 1990), "[t]he terms liberty interest and property interest are used in the context of procedural-due-process claims."  "[T]he concepts of liberty and property interests, are, as we have noted, useful solely in the context of procedural due process."  Id. at 369 (emphasis supplied).  Accord, Bagley v. Rogerson, 5 F.3d 325, 328-39 (8th Cir. 1993).

This case is perhaps a good illustration of the reasons why words used in judicial opinions, or in legal discourse generally, should not invariably be taken to have the same meaning, whatever the context.  Certainly it is true that no due-process violation, whether procedural or substantive, can occur unless someone has been deprived of life, liberty, or property – in the present case, liberty.  It does not follow that the sort of "liberty" – commonly called "liberty interest" – required as the basis for a procedural-due-process claim must also be shown by someone attempting to assert a substantive claim under the Due Process Clause.  The term "liberty" must be given a sensible construction, one sensitive to the context in which it is being used.  When one has a property interest in a job, for example, a right not to be discharged except for good cause, or when one has been discharged for a stigmatizing reason, it makes good sense to hold that some sort of hearing is necessary, in order to determine either whether good cause for the discharge exists, or whether the stigmatizing reason is a true one.  But when someone, even an at-will employee, is discharged for what later turns out to

-11-

be a totally arbitrary reason, one completely at odds with any notion of common sense, whether the employee in question had tenure, or was stigmatized at the time of his dismissal, has nothing to do with the case. Otherwise, a governmental unit could fire an at-will employee because his name starts with "A," or because it rained last night. We are unwilling to accept any such interpretation of the Constitution.

Accordingly, the order of the District Court, granting defendants' motion for summary judgment, is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

MAGILL, Circuit Judge, dissenting.

I respectfully dissent.

First, the majority's resolution of this appeal turns on an issue that Singleton never raised: whether the reasons given for his discharge were so arbitrary and irrational as to infringe upon his liberty interest in "engag[ing] in any of the common occupations of life . . . ." Ante at 7. "The first step in substantive due process analysis is to identify the constitutional right at stake." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). In this case, the only constitutional rights identified by Singleton throughout the course of these proceedings are the rights of intimate association and marriage. See, e.g., Appellant's Br. at 12 ("Plaintiffs' [sic] claim . . . rests on the right of intimate family association and the fundamental right of privacy in matters of marriage and marital life which are part of a basic right of privacy and an intrinsic element of personal liberty protected by the Due Process Clause of the Fourteenth Amendment."); id. at v ("[t]he action below was brought . . . to redress the . . . invasion of his fundamental liberty interest in marriage and family association"). Singleton has never suggested that his discharge violated some more general liberty interest relating to employment. Because "[o]ur review is limited to issues specifically raised and argued in the [appellant's] brief," White v. Moulder, 30 F.3d 80, 82 (8th Cir.

-12-

1994), we should limit ourselves to addressing only those particularized rights upon which he has chosen to pursue his case.

Second, the majority's resolution of this appeal does not square with the clear precedent of this court: "to the extent our cases recognize a constitutional right to substantive due process, that right is no greater than the right to procedural due process." Weimer v. Amen, 870 F.2d 1400, 1405-06 (8th Cir. 1989) (citing Buhr v. Buffalo Pub. School Dist. No. 38, 509 F.2d 1196, 1202 (8th Cir. 1974)); see also Weathers v. West Yuma County School Dist. R-J-1, 530 F.2d 1335, 1340-42 (10th Cir. 1976) (following Buhr, recognizing it specifically held that "a constitutional right to substantive due process . . . is no greater than the right to procedural due process" (quotations omitted)). The majority concedes that Singleton has identified no property right, see ante at 7, and no liberty interest to support a procedural due process claim. See id. at 10. Under Buhr, Singleton's substantive due process claim thus must be dismissed. The majority suggests that the Buhr court "acknowledged that within this Circuit 'substantive due process claims have spawned two distinct views,'" and that it merely "selected the line of cases holding that there is no right against arbitrary discharge." Id. (citations omitted). Contrary to the majority's assertion, the Buhr court specifically explained that rather than selecting one line of cases in favor of the other, its opinion "reconciled" the various lines of cases. See Buhr, 509 F.2d at 1202. Accordingly, Buhr is the law of this Circuit with respect to Singleton's substantive due process claim.

Third, the substantive due process claim as articulated by the majority leads to a dubious result: at-will employment will now be unconstitutional in the public sector in the Eighth Circuit. The majority uses the concept of substantive due process to preclude a public employer from discharging an at-will employee for an arbitrary or irrational reason. However, the Supreme Court has consistently held that a public employer may discharge an at-will employee for no reason, or even a bad reason, without running afoul of the Due Process Clause. See Codd v. Velger, 429 U.S. 624,

-13-

628 (1977) ("[s]ince the District Court found that (the plaintiff) had no Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question" (footnote omitted)); Bishop v. Wood, 426 U.S. 341, 348-50 (1976) (if employer's reason for discharging employee were false, employee still could not state due process claim).

The majority opinion broadens Singleton's liberty interest in "engag[ing] in any of the common occupations of life," ante at 7 (quotations omitted), to hold that he has a liberty interest in continuing employment as a police officer with the City of Advance absent some nonarbitrary and rational reason to discharge him. This cannot be squared with either the concept of at-will employment or with existing precedent. Indeed, by crafting a right to be free from arbitrary government termination, the majority reaches the anomalous conclusion that "the same element--'freedom from arbitrariness'--should at once entitle a person to due process and also be a part of the process which is due." Jeffries v. Turkey Run Consol. Sch. Dist., 492 F.2d 1, 4 n.8 (7th Cir. 1974) (Judge Stevens). Moreover, the majority ignores that Singleton was merely discharged from one job--that of policeman--and Singleton has not suggested that he cannot achieve any other employment with the City of Advance or any other city. See Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895-96 (1961) (holding that where plaintiff "remained entirely free to obtain employment" either with her employer or another employer, her liberty right in "follow[ing] a chosen trade or profession" was not implicated).

At worst, the City's decision to discharge Singleton was made on the mistaken belief that Singleton was aware of and possibly involved in his wife and daughter's plan to bribe the chief of police. However, the Supreme Court has specifically explained that

> [w]e must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United

States Constitution cannot feasibly be construed to require federal judicial review for every such error. <u>In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action . . . can best be corrected in other ways</u>. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

<u>Bishop</u>, 426 U.S. at 349-50 (emphasis added). In this case, it is clear that the City of Advance's motivation in discharging Singleton was not any desire to curtail or penalize the exercise of his constitutionally protected rights.

Moreover, in <u>Board of Regents v. Roth</u>, 408 U.S. 564 (1972),[3] the Court explained that "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." <u>Id.</u> at 575. "This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge." <u>Bishop</u>, 426 U.S. at 348. Reasons given in private to Singleton or while participating in this litigation do not constitute the requisite public disclosure. <u>See id.</u> Singleton bears the burden of demonstrating that "the defendants, in connection with discharging him, publicly made untrue charges against him that would stigmatize him so as to seriously damage his standing and associations in the community, or foreclose his freedom to take advantage of other employment opportunities." <u>Waddell v. Forney</u>, 108 F.3d 889, 895 (8th Cir. 1997). In this case, no reason was given for the City of Advance's decision to dismiss Singleton until the city council members provided affidavits during litigation. <u>See</u>

---

[3]I disagree with the majority's suggestion that <u>Roth</u> and other employment-related "liberty interest" cases are inapplicable to the present situation. Certainly, they are relevant in determining the constitutional rights a public at-will employee has in his continued employment.

Appellees' App. at 135, 140, 145, 150, 242. Accordingly, Singleton's discharge was not in violation of any substantive due process.

Despite the Supreme Court's pronouncement that "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions," Bishop, 426 U.S. at 350, the majority's holding permits a discharged at-will public employee to characterize a wrongful discharge claim as a substantive due process claim, and thus bring suit in federal court. Indeed, any at-will public employee disgruntled over a poor job evaluation or a reprimand may bring a substantive due process claim in this court to the extent that the employer's action threatens that employee's now-constitutional right to work. This court must now, on a case-by-case basis, reconcile the fact that a public employer may constitutionally discharge an at-will employee for no reason or a false reason, while that same employer cannot discharge that same employee for an arbitrary and irrational reason. Where will the line be drawn between a false reason for which an employee cannot seek constitutional redress and an arbitrary and irrational reason? This decision forces this court to function in a role which it has heretofore strenuously resisted--that of a "super-personnel department[] second-guessing the wisdom of . . . personnel decisions." Hill v. St. Louis Univ., 123 F.3d 1114, 1120 (8th Cir. 1997) (quotations omitted). By recognizing a right to be free from arbitrary government action, the majority in essence holds that "every time a citizen [is] affected by governmental action, he [will] have a federal right to judicial review." Jeffries, 492 F.2d at 4 n.8. The separation-of-powers doctrine requires this court to exercise greater self-restraint; "[t]he federal judiciary is not a good-government watchdog," Nunez v. City of Los Angeles, 147 F.3d 867, 874 (9th Cir. 1998), and "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." Bishop, 426 U.S. at 349. Setting aside allegedly "arbitrary" and "irrational" discharges is simply beyond the purview of the federal judiciary.

In sum, even if the City of Advance terminated Singleton for an arbitrary reason, the termination failed to impair a liberty interest or a property interest, and thus cannot be cognizable in a substantive due process claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.