MAGILL, Circuit Judge.
Following the analysis of our sister circuits and Supreme Court precedent, we affirm the district court’s[1] holding that, in Missouri, an at-will employment state, a discharged municipal at-will employee does not have a section 1983 substantive due process occupational liberty interest under the Fourteenth Amendment.
I.
A. Facts
David Singleton worked for the City of Advance, Missouri as a police officer from 1990 until his termination in 1994. The City of Advance did not have a written employment agreement with Officer Singleton. Officer Singleton’s employment was terminable at will, either by the mayor with approval of a simple majority of the city council, or by a two-thirds vote of the city council. See Mo.Ann.Stat. § 79.240 (1998); State ex rel. Lupo v. City of Wentzville, 886 S.W.2d 727, 730-31 (Mo.Ct.App.1994). Neither state nor local law limited the reasons for which Officer Singleton could be discharged nor afforded him the right to a hearing in connection with his discharge. At the time of Officer *421 Singleton’s discharge, defendant Don Cecil was Advance’s police chief, and defendants Harley Moyer, Ivan Parker, Kevin Tidwell, and Della Price were members of Advance’s city council. William Bradshaw, the mayor of Advance, was not a named defendant.
During the period of his employment, Officer Singleton became concerned that Chief Cecil had abused an incentive program designed to facilitate government purchases by purchasing a car for his own benefit and use under the program.[2] Despite his belief that Chief Cecil had engaged in illegal activity, Officer Singleton never notified any law enforcement officials, the mayor, or the city council of his concern. On the morning of March 8, 1994, Officer Singleton’s wife, Joann, called their daughter, Sabrina, on a cordless telephone. During the conversation, they began discussing Chief Cecil, and Joann said she wanted to “set up” Chief Cecil by hiring someone to bribe him. Unbeknownst to Joann and Sabrina, this statement was recorded by David George, a local private investigator who happened to be scanning radio frequencies at the time.[3] Later that day, George contacted Chief Cecil and Mayor Bradshaw and played the recorded conversation for them. George also gave Chief Cecil a copy of the recording. Chief Cecil then visited the members of the city council and played the recording for them individually. Each council member recognized Joann’s and Sabrina’s voices on the recording and, at a special meeting on March 11, 1994, they unanimously voted to terminate Officer Singleton’s employment. They did not include a reason for discharging Officer Singleton in his termination letter. Nor did they publicly divulge any reason for the discharge.
Officer Singleton then initiated this suit under 42 U.S.C. § 1983 against Chief Cecil, the four council members, and the City of Advance. He alleged that his termination by the defendants violated his rights of free speech, due process, intimate association, and privacy. His free speech allegation rested on the premise that he was discharged in an effort to keep him silent concerning Chief Cecil’s car purchase. In response, the council members divulged that they based the termination decision solely on Joann’s plot to bribe Chief Cecil. The district court granted summary judgment in favor of the defendants on all of Officer Singleton’s claims. Particularly, the district court concluded that Officer Singleton could not prevail on his free speech claim because he could not demonstrate any causal connection between Chief Cecil’s car purchase and his termination. See Singleton v. Cecil, 955 F.Supp. 1164, 1166-67 (E.D.Mo.1997). The district court also found that Officer Singleton could not prevail on any procedural due process claims because, as an at-will employee, he had no liberty or property interest in his job. See id. at 1167. Finally, the district court held that Officer Singleton’s claims that he was deprived of his rights of intimate association and marital privacy failed because “the defendants had a legitimate, good faith belief that plaintiff, with his family, was engaging in improper conduct by conspiring to bribe the Chief of Police.” Id.
B. Missouri Atr-Will Employment Law
Because the “Due Process Clause does not purport to supplant traditional tort law,” Collins v. City of Harker Heights, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (quotations omitted), and because property interests pro *422 tected by the Due Process Clause are not created by the Constitution, but rather by independent sources such as state law, municipal ordinance, or contract, see Bishop v. Wood, 426 U.S. 341, 344 & n. 7, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577-78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 718 & n. 3 (8th Cir.1995), we briefly set forth the pertinent Missouri law on at-will employment. In this case, neither state law, municipal law, a collective bargaining agreement, or an employment contract afforded Officer Singleton any property interest in his job. In contrast, as an at-will employee in Missouri, he could be discharged “for cause or without cause.” Lake v. Tuell, 687 S.W.2d 191, 193 (Mo.1985). Indeed, he could even be discharged “for no reason or for an arbitrary or irrational reason.” Shawcross v. Pyro Prods., Inc., 916 S.W.2d 342, 343 (Mo.Ct.App.1995) (quotations omitted).
Notwithstanding the broad grant to employers of the power to fire at-will employees for any or no reason, Missouri law affords a discharged at-will employee such as Officer Singleton the ability to seek judicial redress. Such an employee may assert a cause of action for tortious interference with employment against third-parties, i.e., non-employers such as George, for inducing the discharge. See Stanfield v. National Elec. Contractors Ass’n, Inc., 588 S.W.2d 199, 202 (Mo.Ct.App.1979); see also Haddle v. Garrison, — U.S. -, -, 119 S.Ct. 489, 492, 142 L.Ed.2d 502 (1998) (explaining that “third-party interference with at-will employment relationships ... has long been a compen-sable injury under tort law”). He also may bring a tortious interference claim against his direct supervisor and employer if he presents “evidence eliminating any business justification at all for the termination.” Eggleston v. Phillips, 838 S.W.2d 80, 83 (Mo.Ct.App.1992). In addition, and despite the typical prohibition against bringing wrongful discharge claims, such an employee may allege that his discharge violated Missouri public policy. See Shawcross, 916 S.W.2d at 343. Officer Singleton has not attempted to assert any state law claims in this case.
II.
On appeal, a divided panel of this court originally affirmed the district court in all respects. See Singleton v. Cecil, 133 F.3d 631, 635 (8th Cir.), vacated, 133 F.3d 631, 636 (8th Cir.1998) (Singleton I). After granting Officer Singleton’s petition for rehearing, the panel, with one judge dissenting, affirmed most of the district court’s grant of summary judgment, but reversed on the sole ground that it believed the defendants deprived Officer Singleton of his occupational liberty, which was ostensibly protected by substantive due process. See Singleton v. Cecil, 155 F.3d 983, 986-90 (8th Cir.), vacated, 155 F.3d 983, 992 (8th Cir.1998) (Singleton II).
In the course of reversing the district court, the panel majority conceded that Officer Singleton was not deprived of any life, liberty, or property interest that would support a procedural due process claim. See id. at 987, 989. Under Eighth Circuit law, this concession should have precluded Officer Singleton from proceeding on a substantive due process theory. See Weimer v. Amen, 870 F.2d 1400, 1405-06 (8th Cir.1989) (“to the extent our cases recognize a constitutional right to substantive due process, that right is no greater than the right to procedural due process”); Buhr v. Buffalo Pub. Sch. Dist. No. 38, 509 F.2d 1196, 1202 (8th Cir.1974); accord Clark v. Whiting, 607 F.2d 634, 641-42 n. 17 (4th Cir.1979) (absence of a liberty or property interest in connection with a procedural due process claim is fatal to the plaintiffs purported substantive due process claim); Weathers v. West Yuma County Sch. Dist. R-J-1, 530 F.2d 1335, 1340-42 (10th Cir.1976) (same); Jeffries v. Turkey Run Consol. Sch. Dist., 492 F.2d 1, 4 (7th Cir.1974) (Stevens, J.) (same).
*423 Nevertheless, the panel majority elected not to follow this authority. Acknowledging that “the Fourteenth Amendment does not create any generalized free-floating right against depriving someone of ‘due process’ in the abstract,” Singleton II, 155 F.3d at 987, the panel majority held that Officer Singleton had a general “occupational liberty” — referred to as “the right ‘to engage in any of the common occupations of life’ ” — that was entitled to substantive due process protection. Id. (quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). The panel majority then held that Officer Singleton had been deprived of his occupational liberty on two different bases: (1) by speculating that if the reason for discharging him became known then it might be difficult for him to secure employment as a police officer elsewhere, and (2) by holding that this occupational liberty conferred upon him the right to retain his particular job with the City of Advance. See id. at 988. Relying on cases such as Kelley v. Johnson, 425 U.S. 238, 248, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) and Lowman v. Davies, 704 F.2d 1044, 1046 (8th Cir.1983), the panel majority also held that “if a government employer’s decision or policy is so irrational that it may be branded arbitrary, an employee may plausibly assert that he has been denied his substantive due process rights under the Fourteenth Amendment.” Singleton II, 155 F.3d at 986 (quotations omitted). According to the panel majority, the defendants deprived Officer Singleton of his occupational liberty by discharging him because of Joann’s plot, and the notion of substantive due process absolutely barred the defendants from discharging Officer Singleton for this supposedly arbitrary or irrational reason.[4]
At this time, we pause to note that neither Kelley nor Lowman involved an employee’s occupational liberty in an at-will employment state, although both were decided under the rubric of substantive due process. Both of these cases dealt with the constitutionality of governmental regulations addressing the appearance — ■ specifically the hair length — of governmental employees and the employees’ assertions that these regulations violated “some sort of ‘liberty’ interest within the Fourteenth Amendment in matters of personal appearance.” Kelley, 425 U.S. at 244, 96 S.Ct. 1440; see also Lowman, 704 F.2d at 1045 (case involved an employee’s alleged “freedom to govern one’s personal appearance” (quotations omitted)). The Supreme Court even questioned whether any such liberty was protected by substantive due process, but was willing to assume so for purposes of the appeal. See Kelley, 425 U.S. at 244, 96 S.Ct. 1440.[5]
III.
Officer Singleton initially challenges the district court’s conclusion that the defendants did not violate his substantive due process right of privacy in his marital relationship and his First Amendment right of intimate association. With respect to these challenges, we affirm the district court for the reasons expressed in the first panel opinion. See Singleton I, 133 F.3d at 634-35; see also Singleton II, 155 F.3d at 986.
IY.
We hold that the defendants’ alleged arbitrary and capricious firing of *424 Officer Singleton, an at-will employee under Missouri law who could be discharged “for cause or without cause,” Dake, 687 S.W.2d at 193, or “for no reason or for an arbitrary or irrational reason,” Shawcross, 916 S.W.2d at 343 (quotations omitted), because of the conversation between his wife and daughter did not violate his substantive due process rights. To hold otherwise would be to disregard Supreme Court precedent and the decisions of our sister circuits, which hold that an employee’s occupational liberty is not protected by substantive due process when the employee is discharged by a governmental employer. We would also be abusing § 1983 to intrude upon and second-guess at-will employment decisions made by state actors, notwithstanding the Supreme Court’s admonishment that “[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies” and “[t]he United States Constitution cannot feasibly be construed to require federal judicial review for every such error.” Bishop, 426 U.S. at 349-50, 96 S.Ct. 2074 (footnote omitted). Furthermore, we would be distorting the Constitution to supplant Missouri state law and create a federal tort regulating state employment decisions. Cf. Collins, 503 U.S. at 128, 112 S.Ct. 1061 (explaining that “state law, rather than the Federal Constitution, generally governs the substance of the employment relationship” and the “Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society” (quotations omitted)).
The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving “any person of life, liberty, or property, without due process of law....” U.S. Const, amend. XIV, § 1. This clause has two components: the procedural due process and the substantive due process components. See County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1713, 140 L.Ed.2d 1043 (1998). “Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated,” Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 445-46 (8th Cir.1995), and “[t]he possession of a protected life, liberty, or property interest is ... a condition precedent” to any due process claim. Movers Warehouse, 71 F.3d at 718; see also Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir.1998) (“a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property”). “[W]here no such interest exists, there can be no due process violation.” Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir.1997), cert. denied, — U.S. -, 118 S.Ct. 1188, 140 L.Ed.2d 319 (1998). Merely labeling a governmental action as arbitrary and capricious, in the absence of the deprivation of life, liberty, or property, will not support a substantive due process claim. See Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 226, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (“the Court has no license to invalidate legislation which it thinks merely arbitrary or unreasonable” (quotations omitted)); see also Nunez, 147 F.3d at 873 (“There is no general liberty interest in being free from capricious government action.”); Valot v. Southeast Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1233 (6th Cir.1997) (Ryan, J., concurring) (“merely to state that the Due Process Clause was ‘intended to secure the individual from the arbitrary exercise of the powers of government’ ... does nothing to state a claim under the substantive component of the Due Process Clause”); Jeffries, 492 F.2d at 4 n. 8 (Stevens, J.) (no general liberty interest in being free from arbitrary and capricious governmental action). “Thus, in the absence of a life, liberty or property interest [Officer Singleton] could be terminated for arbitrary and capricious reasons.” Zorzi v. County of Putnam, 30 F.3d 885, 895 (7th Cir.1994).
The only question here is whether Officer Singleton has been deprived of a “lib *425 erty” protected by substantive due process.[6] The substantive component of “the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, ‘deeply rooted in this Nation’s history and tradition,’ and ‘implicit in the concept of ordered liberty,’ such that ‘neither liberty nor justice would exist if they were sacrificed.’ ” Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997) (citations omitted).[7] Justice Powell articulated that “substantive due process rights are created only by the Constitution,” unlike procedural due process rights which can be created by either state law or the Constitution. Ewing, 474 U.S. at 229, 106 5.Ct. 507 (Powell, J., concurring). For this reason, “[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.” Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).
Officer Singleton suggests that the defendants, by discharging him from employment, have deprived him of his occupational liberty, which supposedly confers upon him the right to continued employment as a police officer with the City of Advance absent some nonarbitrary and rational reason for his discharge. Notably, this is not a situation where the government, as regulator, has somehow used its regulatory authority to deny a person the opportunity to pursue a chosen profession. Compare Roth, 408 U.S. at 575, 92 S.Ct. 2701 (noting that “on the record before us, all that clearly appears is that the respondent was not rehired for one year at one university”), with Schware v. Board of Bar Exam’rs, 353 U.S. 232, 246-47, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (government refused to license plaintiff as a lawyer, thus preventing plaintiff from working as a lawyer anywhere in the state). Rather, this case involves a governmental employer’s decision to discharge an at-will employee. Thus, we are dealing with the government acting “as [a] proprietor” that was managing “its own internal affairs” rather than as a “lawmaker” that was attempting “to regulate or license ... an entire trade or profession, or to control an entire branch of private business.” Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). “[I]t is crucial to note the distinction between ‘legislative’ acts” such as laws and regulations “and ‘non-legislative’ or ‘executive’ acts” such as employment terminations when analyzing substantive due process claims. McKinney v. Pate, 20 F.3d 1550, 1557 n. 9 (11th Cir.1994) (en banc).
There is no suggestion that a right to continued employment with a particular governmental employer has “anything resembling ‘the individual’s freedom of choice with respect to certain basic matters of procreation, marriage, and family life.’ ” Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (per curiam) (citation omitted). To the contrary, the Supreme Court has suggested that a public employee’s interest in continued employment with *426 a governmental employer is not so “fundamental” as to be protected by substantive due process.[8] See id. at 195-99, 99 S.Ct. 1062. In Harrah, a school board voted not to renew a tenured teacher’s contract because she refused to comply with the board’s continuing education requirements. See id. at 195-96, 99 S.Ct. 1062. The teacher claimed that she had a liberty interest in not being discharged pursuant to that rule. See id. at 198, 99 S.Ct. 1062. While acknowledging that the Due Process Clause “protects substantive aspects of liberty against impermissible governmental restrictions,” id. at 197, 99 S.Ct. 1062, the Court explained that the teacher’s professed liberty interest was completely unrelated to “the individual’s freedom of choice with respect to certain basic matters of procreation, marriage, and family life.” Id. at 198, 99 S.Ct. 1062 (quotations omitted). In addition to its conclusion that, the board’s action was not arbitrary, the Court held that the teacher “neither asserted nor established ... the deprivation of any fundamental constitutional right.” Id. at 199, 99 S.Ct. 1062.
Although the Court has not otherwise ruled on the applicability of occupational liberty and substantive due process in the context of a governmental employer’s decision to discharge an employee, the Court’s procedural due process decisions suggest that Officer Singleton’s alleged occupational liberty is not protected by substantive due process. See Roth, 408 U.S. at 572-75, 92 S.Ct. 2701; McElroy, 367 U.S. at 895-96, 81 S.Ct. 1743. For example, the Court has explained that “state law, rather than the Federal Constitution, generally governs the substance of the employment relationship.” Collins, 503 U.S. at 128, 112 S.Ct. 1061. The Court has also asserted that “[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions” and “[t]he United States Constitution cannot feasibly be construed to require federal judicial review for every” allegedly erroneous decision. Bishop, 426 U.S. at 350, 96 S.Ct. 2074. The Court has further exclaimed that “[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.” Id. at 349, 96 S.Ct. 2074.
In Roth, a University president informed a non-tenured 'teacher that he would not be rehired for the next academic year but did not give any reason for the decision. See 408 U.S. at 568, 92 S.Ct. 2701. While specifically recognizing that the term “liberty” included “the right ... to engage in any of the common occupations of life,” id. at 572, 92 S.Ct. 2701 (quotations omitted), the Court went on to hold that the University’s decision did not implicate any liberty interest. See id. at 573, 92 S.Ct. 2701. The Court explained that “in declining to re-employ the [teacher], [the University] imposed on him [no] stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.” Id. According to the Court, “[i]t stretches the concept too far to suggest that a person is deprived of *427 ‘liberty’ when he [is discharged from] one job but remains as free as before to seek another.” Id. at 575, 92 S.Ct. 2701.
In McElroy, the plaintiff was a cook who worked for a private employer on the premises of a naval base and lost her employment when the naval officer in charge of the base, without giving any reasons, withdrew her security clearance. See 367 U.S. at 887-88, 81 S.Ct. 1743. When analyzing her claim, the Court explained that it “has consistently recognized that ... the interest of a government employee in retaining his job[ ] can be summarily denied.” Id. at 896, 81 S.Ct. 1743. According to the Court, “[i]t has become a settled principle that government employment, in the absence of legislation, can be revoked at ... will.” Id.[9]
In further contrast to any assertion that Officer Singleton’s alleged occupational liberty is so fundamental as to be protected by substantive due process, the Supreme Court has steadfastly refused to find a violation of the Due Process Clause when a public employer discharges an employee for no reason, a bad reason, or even a false reason absent the employer’s publication of stigmatizing information about the employee in connection with the discharge. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n. 13, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (summarily rejecting the “argu[ment] that [plaintiff] was unconstitutionally deprived of liberty because of the accusation of dishonesty that hung over his head” on the ground that plaintiffs “failure to allege that the reasons for [his] dismissal were published dooms this claim”); Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam) (“Since the District Court found that [the Plaintiff] had no Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question. Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is [a procedural] hearing [constitutionally] required.” (footnote omitted)); Bishop, 426 U.S. at 348-50, 96 S.Ct. 2074 (even if employer’s reason for discharging at-will employee was false, employee still could not state a due process claim). In this case, it is undisputed that the defendants did not publicize any reason for discharging Officer Singleton until they were defending themselves in this litigation and there is no evidence in the record that Officer Singleton has been stigmatized. Regardless, even when the public employer divulges stigmatizing information about an employee in connection with that employee’s discharge, the Court has only held that the employee’s occupational liberty is afforded procedural due process protection. The Court has neither held nor intimated that the employee’s occupational liberty is entitled to substantive due process protection.
Based on this Supreme Court case law, several of our sister circuits have refused to allow discharged public employees to proceed with substantive due process claims against their former employers, holding that “employment rights are not ‘fundamental’ rights created by the Constitution.” McKinney, 20 F.3d at 1560; accord Zorzi, 30 F.3d at 895; Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1351 (6th Cir.1992); see also Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir.1989) (“no clearly established constitutional right *428 to substantive due process protection of continued public employment.”); cf. Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir.1991) (plaintiffs alleged “right to pursue her employment free from emotional health risks resulting from her supervisor’s verbal harassment [does not] warrant! ] substantive due process protection under the United States Constitution”). We agree with these circuits that the so-called “[ojccupational liberty ... is not protected by substantive due process. Rather, any cause of action for the deprivation of occupational liberty [is] confined to a claim under procedural due process; there is no such cause of action under substantive due process.” Zorzi, 30 F.3d at 895 (citation omitted); see also McKinney, 20 F.3d at 1560 (“Supreme Court precedent demonstrates than an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component.”); Roe v. Antle, 964 F.Supp. 1522, 1531-33 (D.N.M.1997); Reinhart v. City of Maryland Heights, 930 F.Supp. 410, 413 (E.D.Mo.1996); Rowe v. Board of Educ. of Chattanooga, 938 S.W.2d 351, 353 n. 1 (Tenn.1996).
An at-will public employee’s “occupational liberty” should not be utilized as a vehicle for a federal court to interfere with employment decisions under the rubric of substantive due process, especially here, where the discharged employee has no right to procedural due process protection. A contrary conclusion would enable every discharged at-will public employee who has no heretofore recognized right to procedural due process to assert a constitutional claim and seek redress in federal court.[10] Indeed, if we were to hold that an employee’s occupational liberty is afforded substantive due process protection in this case, that liberty should also be afforded procedural due process protection.[11] Public at-will employees would then have the right to a hearing in connection with all discharge decisions so that they may ascertain whether the reasons for discharge were arbitrary or irrational. This directly contradicts, if not outright vitiates, the Supreme Court’s repeated assertions that an employee can be discharged for no reason, a bad reason, or a false reason without a hearing, and that an employee has no right to a hearing in the absence of a property right to his job or unless his employer publicly divulged a stigmatizing reason for the dismissal. This also essentially abrogates the concept of at-will employment. This would also require us to formulate, on a case-by-case basis, standards distinguishing bad and false reasons, for which an at-will public employee can be discharged, from arbitrary or irrational reasons.[12] Indeed, “every time a [governmental employee] [was] affected by governmental action, he would have a federal right to judicial review.” Nunez, 147 F.3d at 874 (quotations omitted). We would be forced to assume a role that we usually resist — that of a “super-personnel department! ] second-guessing the wisdom of ... personnel decisions,” Hill v. St. Louis Univ., 123 F.3d 1114, 1120 (8th Cir.1997) (quotations omitted), notwithstanding the Court’s admonishment that “[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by *429 public agencies.” Bishop, 426 U.S. at 349, 96 S.Ct. 2074.
Even if we were to assume that occupational liberty is sufficiently fundamental to qualify for substantive due process protection, we cannot accept the proposition that the defendants deprived Officer Singleton of that liberty. In the context of a governmental employer’s decision to discharge an employee, the Supreme Court, in a procedural due process case, has defined the term “occupational liberty” as the “freedom to take advantage of other employment opportunities.” Roth, 408 U.S. at 573, 92 S.Ct. 2701. According to the Court, “[i]t stretches the concept too far to suggest that a person is deprived of ‘liberty’ when he [is discharged from] one job but remains as free as before to seek another.” Id. at 575, 92 S.Ct. 2701. “This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge.” Bishop, 426 U.S. at 348, 96 S.Ct. 2074. Indeed, “the right to follow a chosen trade or profession” is not constitutionally deprived when a plaintiff, notwithstanding an adverse employment action, “remain[s] entirely free to obtain employment” or “to get any other job” in his chosen trade. McElroy, 367 U.S. at 895-96, 81 S.Ct. 1743.
It has been suggested that the defendants imposed a stigma upon Officer Singleton when they discharged him.[13] Certainly, the mere fact that he was discharged, while it “might make him somewhat less attractive to some other employers[,] would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of ‘liberty.’ ” Roth, 408 U.S. at 574 n. 13, 92 S.Ct. 2701. Although the actual reason for Officer Singleton’s discharge could possibly inhibit Officer Singleton’s ability to secure employment in the future as a police officer, this reason was never publicly divulged until the defendants communicated it to Officer Singleton during this lawsuit. Because the “communication was made in the course of a judicial proceeding which did not commence until after [he] had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim.” Bishop, 426 U.S. at 348, 96 S.Ct. 2074. Moreover, there is no evidence in the record to suggest that the reason for Officer Singleton’s discharge has ever been made public outside of these proceedings or that it has impacted his ability to secure other employment.
y.
For the foregoing reasons, we AFFIRM the judgment of the district court.

. The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

. In fact, Mayor Bradshaw and the city council members had prior knowledge of the vehicle purchase and considered the car available for use by the city as a backup police vehicle.

. There is no contention on appeal that this interception was illegal or that George was targeling conversations between Joann and Sabrina. George testified that throughout March 1994, he monitored cordless phone channels in the City of Advance with his radio scanner “more or less” for entertainment purposes. Appellee’s App. at 228.

. The panel majority also concluded that the defendants' decision to discharge Officer Singleton was arbitrary and irrational. See Singleton II, 155 F.3d at 987.

. In the only Eighth’Circuit case concluding that a public employee has a substantive due process right to be free from arbitrary and capricious discharge, see Moore v. Warwick Pub. Sch. Dist. No. 29, 794 F.2d 322, 329 (8th Cir.1986), the employee had an undisputed property right in his continued employment. See id. at 326 (employee discharged during term of contractual employment). The Moore panel neither addressed nor considered any claim that an employee’s "occupational liberty” would afford a substantive due process right to be free from arbitrary and capricious discharge.

. There is no dispute that Officer Singleton has not been deprived of either life or property-

. An alternative way to bring a substantive due process claim is to assert that the government’s actions “either 'shock! 1 the conscience' or 'offend[ ] judicial notions of fairness ... or ... human dignity.’ ” Riley v. St. Louis County, 153 F.3d 627, 631 (8th Cir.1998) (citations omitted), cert. denied, - U.S. -, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999). In such a case, the plaintiff’s "burden is to establish that the government action complained of is ‘truly irrational,’ that is, 'something more than ... arbitrary, capricious, or in violation of state law.' ” Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir.1998) (en banc) (quotations and citations omitted). Singleton has not, however, sought to prevail under this “shocks the conscience” theory, instead relying solely on the supposed existence and deprivation of his "fundamental” occupational liberty interest. Accordingly, we need not address the applicability of this theory to the facts of the present case.

. The dissent, quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), asserts that we are ignoring the Supreme Court's assertion that “liberty includes the right 'to engage in any of the common occupations of life....' " Post at 432. The Court recently explained that this liberty right to engage in an occupation extends to a person's ability to engage in a "field of private employment.” Conn v. Gabbert, - U.S. -, 119 S.Ct. 1292, 1296, 143 L.Ed.2d 399 (1999). The Court then made clear that this right has been afforded substantive due process protection only when the government "complete[ly] prohibits],” rather than "brief[ly] interrupt[s],'' a person from engaging in his desired occupational field. Id. Moreover, the Court emphasized that this “right is simply not infringed by the inevitable interruptions of our daily routine as a result of legal process which all of us may experience from time to time.” Id. Here, Officer Singleton, an at-will employee, has been discharged by his governmental employer from one specific job. This is an experience suffered by multitudes of persons, and there is no evidence that Officer Singleton has been stigmatized by his discharge or that he has been completely prohibited from working as a police officer in the future.

. Although the Court also "assume[d] that [the plaintiff] could not constitutionally have been excluded from [her job] if the announced grounds for her exclusions had been patently arbitrary or discriminatory,” McElroy, 367 U.S. at 898, 81 S.Ct. 1743, the Court made this assumption only in the context of an employee's ability to demand a procedural due process hearing. Id. The Court made no suggestion that an employee would be able to rely on "occupational liberty” to assert a substantive due process claim. Cf. McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir.1994) (en banc) ("Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component”).

. Because every discharge would necessarily constitute the deprivation of an at-will employee’s occupational liberty, each such employee could assert a viable substantive due process claim by merely alleging that his discharge was effected for arbitrary or irrational reasons.

. If occupational liberty is so fundamental as to be protected by substantive due process in the context of a public employer's discharge decision, that occupational liberty would also be protected by procedural due process.

.The other option would be to allow juries to decide whether an employer's decision to discharge an at-will employee was arbitrary. However, this would further eviscerate the concept of at-will employment by allowing each discharged employee to seek peer review of the decision.

. Officer Singleton has not made this specific contention in connection with his substantive due process claim and the record is bereft of any evidence of stigma. He instead seeks to prevail on the bases that (1) he was discharged and (2) the discharge decision was arbitrary and irrational.